AMERICAN CREDIT INDEMNITY CO. OF NEW YORK v. HENRY A. HITNER'S SONS CO.

(Circuit Court of Appeals, Third Circuit. December 9, 1915. Rehearing Denied January 31, 1916.)

No. 1957.

1. TRIAL ⬥136—PROVINCE OF COURT AND JURY—CONSTRUCTION OF CONTRACT.
   In an action on an indemnity bond, the duty of construing the bond was primarily for the court.
   [Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 318, 320, 321, 323–327; Dec. Dig. ⬥136.]

2. INSURANCE ⬥150—INDEMNITY INSURANCE—RISKS ASSUMED.
   A bond indemnifying plaintiff against loss on sales of merchandise to parties given specified ratings by a named mercantile agency provided

that the term of the bond should be from March 18, 1912, to March 17, 1913, inclusive, but that the bond did not cover any loss occurring prior to April 4, 1912, the date of the payment of the premium, though the bond might have been delivered. The application for the bond was made on March 18th, and was accompanied by notes for the premium, with interest from that day. A rider attached to the bond extended the term back from March 17, 1912, and provided for indemnity against losses occurring during the term of the bond, but after April 4th, on goods sold, shipped, and delivered between December 18, 1911, and March 17, 1912, inclusive. Another rider provided that the notes for the premium should be the same in effect, if paid at maturity, as if the premium had been paid by check, and that all other terms and provisions of the bond should remain in full force and effect. It did not appear that the small amount of interest accruing on the notes between the date of the application and the date of the bond was intended to work any change in the bond. *Held*, that the riders did not affect the application of the provision that the bond should not cover any loss prior to April 4th, and such provision was operative, and hence, where sales were made, a loss occurred, and the rating of the purchaser was detrimentally changed during the term of the bond, but prior to April 4th, there could be no recovery.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 305–307; Dec. Dig. ⊛150.]

In Error to the District Court of the United States for the Eastern District of Pennsylvania; J. Whitaker Thompson, Judge.

Action by the Henry A. Hitner's Sons Company against the American Credit Indemnity Company of New York. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

John G. Johnson, Frank P. Prichard, and James W. Bayard, all of Philadelphia, Pa., for plaintiff in error.

Wm. Clarke Mason, of Philadelphia, Pa., for defendant in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

BUFFINGTON, Circuit Judge. In the court below Henry A. Hitner's Sons Company, a corporation of Pennsylvania, brought suit against the American Credit Indemnity Company, a corporation of New York, on a bond of indemnity, alleging a loss covered by such bond. A verdict having been recovered for the plaintiff and judgment entered thereon, defendant sued out this writ, and avers the court erred in its charge to the jury and in refusing certain instructions requested by defendant. In considering such errors the case resolves itself into two questions: First, was the loss of the Dreifus account within the terms of the bond? And, second, did the failure of the insured to give notice of such loss to the insurer, in accordance with the terms of the bond, prevent recovery?

[1, 2] The suit was based on the alleged breach of a contract, and that contract was in writing and constituted the bond in suit. The duty of construing such contract was primarily for the court. On its face the bond is self-explanatory. It was dated April 6, 1912, and indemnified the plaintiff to an amount not exceeding $20,000—

"against actual loss * * * through the insolvency of debtors * * * occurring during the term of this bond * * * on the indemnified's sales of merchandise shipped and delivered during the term of this bond, in the usu-

al course of said business, to individuals, firms, copartnerships, or corporations in the United States of America or in the Dominion of Canada. The term of this bond shall be from the 18th day of March, 1912, to the 17th day of March, 1913, both days inclusive. * * * This bond does not cover any loss occurring prior to April 4, 1912, the date of the payment of the premium thereon, although the bond may have been delivered."

The bond further provided:.

"No loss is covered by this bond, unless the debtor to whom the goods were shipped and delivered, shall have in the latest published book of the R. G. Dun & Co. Mercantile Agency, at the date of shipment, one of the ratings of the said agency, both as to capital and credit, as tabulated below."

There is no dispute that the sales in question were made by the plaintiff to the Dreifus Company within the term provided by the policy, that the loss on such sales was made prior to April 4, 1912, and that the rating of the Dreifus Company had been detrimentally changed before April 4th. Clearly such loss prior to April 4th was not covered by the bond, and, if the clause quoted above is to govern, it was the duty of the court below to construe the contract and to so hold, and its action in refusing to affirm defendant's point, which read, "that if the rating of E. Dreifus & Co. had been detrimentally changed" (of which fact there was no question) "before April 4, 1912, then the plaintiff was not entitled to recover for loss on that account," was error. The court, however, denied the point and submitted the case to the jury, with instructions hereafter quoted, which in effect held that, if the jury found that the premium on this bond was paid on March 20th, their verdict should be for the plaintiff. The practical effect of this ruling and finding is to eliminate from the bond the provision:

"This bond does not cover any loss prior to April 4, 1912, the date of the payment of the premium thereon," etc.

Such instruction is sought to be justified by reason of a certain rider attached to the bond and the facts connected with the payment of the premium. By the copy of the application attached to the bond it appears that the bond was applied for on March 18, 1912. Such application was accompanied by two notes of the insured for the premium, dated March 18, and payable May 1, 1912, with interest from date. Negotiations took place between the parties, which were evidenced by two riders attached to the bond when finally issued, and the term of the bond was extended back from March 17, 1912, so as to cover losses from December 18, 1911; the rider providing:

"It is agreed that losses of the indemnified occurring during the term of this bond, but after April 4th, the date of the payment of the premium therefor, on goods sold, shipped, and delivered by the indemnified between the 18th day of December, 1911, and the 17th day of March, 1912, both days inclusive, shall, if otherwise coming within the provisions of this bond," etc.

This rider still continued the limitation as to losses occurring prior to April 4th. The other rider provided as follows:

"It is agreed that the indemnified's two notes aggregating amount of premium on this bond, receipt of which is hereby acknowledged and which are ac-

cepted by the American Credit Indemnity Company of New York in payment of said premium, shall be the same in effect, provided said notes are paid at or before their maturity as if the entire amount of premium had been paid by the indemnified by check. But if said notes are not paid at or before maturity then losses occurring prior to the payment of said notes shall not be covered or provable under this bond. All other terms and provisions of the said bond to remain in full force and effect."

This agreement, it is manifest, related solely to the payment of the premiums, and stipulated for a payment of such premium after the date and delivery of the bond. It defined the effect of such payment, viz. "the same in effect * * * as if the entire amount of premium had been paid by the indemnified by check," and by the further definition, viz. "All other terms and provisions of the said bond to remain in full force and effect," it precluded any other effect than that, namely, "as if the entire amount of premium had been paid by the indemnified by check." Now, what would have been the effect if the indemnified had paid the premium by check or cash when the policy was delivered, or when the application was made? Manifestly, it would simply have amounted to a cash payment of the premium. The mere fact that the notes, when paid, involved the payment of interest on the premium for the few days that intervened between the date of the application and the date of the bond, does not serve to change the two provisions of the rider, that the payment of such notes (which included interest from their dates) shall be "the same in effect * * * as if the entire amount of premium had been paid by the indemnified by check," and that "all other terms and provisions of the said bond to remain in full force and effect."

There is no testimony or stipulation that this small amount of interest was to work any change in the bond, and in the absence of such proof or stipulation, its payment may be attributed to its being so small as not to be material, or that the agreement of the company to extend the bond back from March 18, 1912, to December 18, 1911, or to accept notes instead of cash for the premium, was the consideration for such payment of interest. It follows, therefore, that the provision in the bond that the bond does not cover any loss occurring prior to April 4, 1912, constituted the written contract between the parties, that it was the duty of the court below to so instruct the jury, and that there was error when the court charged the jury:

"If you find from the evidence that the payment [of the premium] was made prior to April 1, that is to say, on March 20, 1912, then the defense as to the change of rating would not be a valid defense in this case, and as to that defense it would be your duty to find in favor of the plaintiff. If, on the other hand, you find that payment was made on April 4, 1912, then it is apparent from the evidence that there was a change in rating which was a detrimental change to the credit of Dreifus & Co., and the plaintiff cannot recover"

—and permitted it to change the written contract which the parties themselves had not changed. As the determination of this question shows the plaintiff had, under the policy, no right to recover for the Dreifus loss, it is not necessary to pass on the question of plain-

tiff's alleged failure to give the defendant the notice of such loss as the policy required.

The judgment will therefore be reversed, and the case remanded to the court below for further proceedings in accord with this opinion.