HENRY A. HITNER'S SONS CO. v. AMERICAN CREDIT INDEMNITY CO.

(Circuit Court of Appeals, Third Circuit.   February 26, 1917.)

No. 2184.

INSURANCE ⊜⇒511—INDEMNITY RISK—POLICY—CONSTRUCTION.
    On application executed March 18, 1912, a bond, indemnifying plaintiff against loss on sales of merchandise upon credit to parties given specified ratings by a mercantile agency, was issued, the term of the bond being from March 18, 1912, to March 17, 1913, inclusive. A rider provided that losses should be covered although the goods might have been shipped as far back as December 18, 1911, but declared that no loss should be covered which might be sustained before actual payment of the premium notes. Shortly after issuance plaintiff surrendered the original bond and secured another in double the amount, which was issued April 6th.   This bond retained the original term, and also carried back the earliest date of

shipment to December 18th, but provided that no loss occurring before April 4th, which date was arbitrarily fixed as the date when payment should be regarded as having been made, should be covered. Premium notes, however, were not due or payable until May 1st at which time they were paid. The bond further declared that no loss on goods shipped between December 18th and March 17th should be covered if the debtor to whom the shipments had been made should suffer a detrimental change of rating at the hands of the governing mercantile agency between the first shipment and April 4th, the arbitrary date of payment. Plaintiff sustained a loss on goods shipped between December 18, 1911, and March 17, 1912, and it appeared that the debtor suffered a detrimental change of rating before April 4th. The second bond declared that in case the insurer should issue to the indemnified a new bond and the premium thereof should be paid prior to the expiration of the bond, losses occurring during the term of the new bond, on sales of merchandise shipped and delivered within the 12 months next prior to the expiration of the bond, should be covered and might be proven under the new bond subject to its provisions and limitations the same as though the goods had been shipped during its term and the governing rating of the debtor under the bond at the date of each shipment should apply. *Held*, that the provisions as to subsequent bonds did not apply to the loss suffered by plaintiff, such provisions contemplating the expiration of the original bond by lapse of time; and, the original bond having been surrendered and a substitute bond obtained, no recovery could be had on the loss, as it did not fall within the terms of the latter bond.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1296, 1297, 1299.]

In Error to the District Court of the United States for the Eastern District of Pennsylvania; J. Whitaker Thompson, Judge.

Action by Henry A. Hitner's Sons Company against the American Credit Indemnity Company. There was a judgment for defendant, and plaintiff brings error. Affirmed.

Wm. Clarke Mason and Howard S. Baker, both of Philadelphia, Pa., for plaintiff in error.

Frank P. Prichard, James Wilson Bayard, and John G. Johnson, all of Philadelphia, Pa., for defendant in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

McPHERSON, Circuit Judge. This suit is before us for the second time. On the first writ of error (228 Fed. 654) the facts did not appear as fully as on the present writ, and therefore it may be desirable to set forth the controversy again, but as briefly as possible.

The plaintiff seeks to recover on a policy, or bond, of credit insurance for two losses, one for a small amount that may be passed over for reasons not now important, and the other for nearly $4,000, a loss incurred by the bankruptcy of Dreifus & Co. The bond sued on was issued April 6, 1912, but it now appears that the parties had made an earlier contract. On the trial under review the plaintiff proved that on March 18 the first and only written application was executed, and that a bond was issued thereon in the amount of $10,000 under date of March 20, the bond coming into the plaintiff's hands on March 25. Within a few days the plaintiff decided to increase the amount to $20,-

000, and negotiations with this object were entered upon and completed, the first bond was surrendered, and the bond sued on was issued. In many respects the two instruments are identical, but several important changes appear in the second. The maximum amount at risk, the premium, and the amount of loss on account of a single debtor, were all doubled, and what is called the "initial loss"—that is, the proportion to be borne by the insured before the credit company could be called upon—was increased from one-fifth per cent. to one-third per cent. A change still more important in the present controversy was made, and this requires a fuller explanation.

The first bond covered losses sustained during a term beginning March 18, 1912, and ending March 17, 1913, both days included, but a rider provided that such losses should be covered although the goods might have been shipped as far back as December 18, 1911. But there were certain limitations, one of them being this: As the premium, $550, had not been paid in cash, but was secured by two notes, the rider provided that unless the notes should be paid at or before maturity no loss should be covered that might be sustained before actual payment; but, if the notes should be duly met, the bond should stand as if the premium had been paid by check, i. e., in cash. The second bond retained the same term—March 18 to March 17—and also carried back the earliest date of shipment to December 18, but a vital change was made in dealing with the payment of the premium. The premium was now $1,100, and for this two notes were given (the previous notes being apparently surrendered), and the bond fixed a definite date, April 4, as the date when payment should be regarded as having been made, and expressly declared that no loss occurring before that date should be covered. The bond still covered a loss occurring during the term, even if the goods had been shipped as far back as December 18, but such a loss must occur *after* April 4, the date arbitrarily fixed as the date of payment, and, moreover, no loss on goods shipped between December 18 and March 17 should be covered if the debtor to whom the shipments had been made should suffer a detrimental change of rating at the hands of the governing mercantile agency (R. G. Dun & Co.) between the first shipment and April 4, the arbitrary date of payment. Each of the 2 notes was for $550, was dated March 18, was payable May 1, and was paid at maturity. The effect of such payment was to make it certain that the bond was in force according to its terms, and (as already stated) one of its terms fixed the date of payment as April 4, regardless of the fact that the notes were not to be actually paid until May 1.

The loss in dispute was on goods shipped to Dreifus & Co. after December 18 and before March 17, and as it was sustained after April 4 it is covered by the bond, unless the credit rating of the bankrupt firm was detrimentally changed before April 4. In our view, this is the central question in the case; on the former writ we held that a detrimental change had been made, and we find nothing in the record of the second trial to raise any doubt on this subject. The first writ required us to decide whether the jury was the proper tribunal to determine the true date of payment, much stress being laid by the Hit-

ner Company on the fact that in spite of what the bond and rider said about the date of April 4 the credit company had nevertheless accepted notes bearing interest from March 18, the date of the original application, and had shown thereby that April 4 was not the true date. But we upheld the written contract, and decided that the court, and not the jury, should have declared its effect. On the trial now under review, these rulings were followed, and a verdict was directed in favor of the defendant. In our opinion, this action of the court was correct. Very little additional evidence was offered, the principal item being the first bond, and the situation was not materially changed. The facts were more fully presented, and one or two obscurities were cleared up, but no important difference appeared.

The plaintiff in error's chief contention now is founded on the following clause, which appears in both bonds:

"*Advantages of Subsequent Bond.*—In case this company issues to the indemnified a new bond, and the premium therefor is paid prior to the expiration of this bond, losses occurring during the term of the new bond on sales of merchandise shipped and delivered within the twelve months next prior to the expiration of this bond shall be covered and may be proven under the new bond, subject to its provisions and limitations, the same as though the goods had been shipped during its term, and the governing rating of the debtor under this bond at the date of each shipment shall apply. From the net losses so covered and proven, in conjunction with all others covered and proven under the new bond, there shall be deducted the initial loss provided for by the new bond before any liability on the part of this company shall accrue; but the amount of the shipments made during the said prior twelve months shall not be taken into the calculation of sales in computing the amount of the initial loss under the new bond."

We think the object of this clause is reasonably clear, and we agree with the credit company's discussion of the subject. We cannot do better than give the substance of what is said in the brief: The term of these credit bonds is usually for one year. The company does not agree to renew on the same terms, but (as an inducement to renew on some terms) it agrees that the new bond shall cover a loss occurring during the new term by reason of shipments made during the preceding term, and, moreover, it agrees that such mercantile rating of the debtor as would have justified a sale to him under the old bond shall still apply, although otherwise the new bond might require a higher rating. But these provisions evidently contemplate a new bond issued when the term of an old bond comes normally to an end. The new bond is a "subsequent" bond; the company speaks of the "twelve months next prior" in describing the losses to be covered, and uses the phrase "expiration of this bond" instead of "termination"; the latter word being elsewhere used when the contract is dealing with the ending of the bond by other events that may bring its life to a close. Here the facts are different: The bond sued on was not issued when an old bond expired; it merely took the place of the first bond. They cover, not successive terms, but the same term, namely, from March 18, to March 17, and both are carried back to December 18. The first bond was surrendered and canceled at the wish of the insured, mainly in order to obtain a new bond that would increase the amount at risk

to $20,000.  Naturally this doubled the premium, and for some reason that does not appear a change was also made in the rate of "initial loss," and an arbitrary date was agreed upon as the date when the premium should be regarded as paid.  In a word, the bonds were not "successive"; one was intended to be a substitute for the other, and therefore the clause just quoted does not have the application contended for by the plaintiff in error.  Moreover, the conditions and limitations of the new bond are controlling, where they are inconsistent with the conditions and limitations of the old.

We see no occasion to discuss the subject further.  The Dreifus loss is not covered by the contract, and the plaintiff has no case.

The judgment is affirmed.